# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODERICK K. THOMPSON, | CV F   07-00684 LJO DLB HC |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| K. MENDOZA-POWERS, | [Doc. 1] |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

RELEVANT HISTORY

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation (CDCR) pursuant to a conviction in the Kings County Superior Court of second degree murder in violation of California Penal Code section 187, for the beating death of his infant son. (Exhibits A & B, attached to Answer.)  Petitioner was sentenced to fifteen years to life. (See Petition, at 2.)

In the instant petition for writ of habeas corpus, Petitioner does not challenge the validity of his underlying conviction; rather, Petitioner challenges the July 26, 2005, decision by the Board of Parole Hearings (BPH) denying him parole.  (Exhibit C, attached to Answer.) Petitioner contends that there was insufficient evidence to support the BPH's finding that he poses an unreasonable risk of danger to society if released, and the BPH inappropriately relied

1

solely on the commitment offense in finding him unsuitable.

On January 17, 2006, Petitioner filed a petition for writ of habeas corpus in the Kings County Superior Court. (Exhibit D, attached to Answer.) On January 26, 2006, the court denied the petition finding that Petitioner failed to state a claim for relief. (Exhibit E, attached to Answer.)

On February 27,2 006, Petitioner filed a petition for writ of habeas corpus in the California Court of Appeal, Fifth Appellate District. (Exhibit F, attached to Answer.) On April 3, 2006, the court summarily denied the petition. (Exhibit G, attached to Answer.)

Thereafter, Petitioner filed a petition for review in the California Supreme Court, which was denied on February 21, 2007. (Exhibits H & I, attached to Answer.)

Petitioner filed the instant federal petition for writ of habeas corpus on May 7, 2007. (Court Doc. 1.) Respondent filed an answer to the petition on August 20, 2007, and Petitioner filed a traverse on September 10, 2007. (Court Docs. 10, 12.)

### STATEMENT OF FACTS[1]

On April 9, 1980, Petitioner's infant son, Christopher Thompson, was taken to Valley Children's Hospital. The doctors initially believed that the baby was an aborted crib death. However, several fractures were discovered including a fracture of the skull, an old fracture of the left leg, and an old fractured rib. The doctor ordered x-rays due to the observation of swelling to the back of the child's head. Child abuse was suspected because although the fractures could have occurred within the prior days, the swelling of the skull would have occurred within hours after the fracture.[2]

The child's grandparents told the police that they had visited Christopher on various occasions and he would scream as if in pain whenever they picked him up or changed his diaper. In addition, the child's mother told them that Petitioner threatened to kill Christopher because of his crying at night. The grandparents reported that on April 4, 1980, they observed swelling on

---

[1] This statement of facts is derived from the Probation Officer's Report, attached as Exhibit B to Answer.

[2] This was inconsistent with Petitioner's (and his co-defendant's) statements that the child was dropped by the mother about a week and a half prior and hit a chair or some other object.

child's head, and when they told Petitioner and Christopher's mother to take him to the doctor, they refused.  The child died on April 18, 1980, due to cerebral edema due to the fracture of the skull.

Petitioner admitted that he hit the child once, twice, or perhaps three times.  He indicated that he worked long days and was tired when he arrived home, and the baby's crying began to disturb him.  Petitioner admitted that he was drinking heavily during this time and would strike the child after he had been drinking.  Although Petitioner expressed remorse for his actions, he stated that he believed "babies were much more durable."  Petitioner admitted that his life had changed after the arrival of Christopher and he was jealous of him because he was consuming some much of his wife's attention.

## DISCUSSION

I. Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging his underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. <u>Lockyer v. Andrade</u>, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see <u>Lockyer</u>, 538 U.S. at 70-71; see <u>Williams</u>, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" <u>Lockyer</u>, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." <u>Id.</u>, *quoting* <u>Williams</u>, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." <u>Id</u>.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." <u>Lockyer</u>, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." <u>Williams</u>, 529 U.S. at 413; <u>see also</u> <u>Lockyer</u>, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Williams</u>, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." <u>Id</u>. at 411.

4

1  A federal habeas court making the "unreasonable application" inquiry should ask whether the
2  state court's application of clearly established federal law was "objectively unreasonable." Id. at
3  409.
4  Petitioner has the burden of establishing that the decision of the state court is contrary to
5  or involved an unreasonable application of United States Supreme Court precedent. Baylor v.
6  Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the
7  states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a
8  state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th
9  Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).
10 AEDPA requires that we give considerable deference to state court decisions. The state
11 court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's
12 interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*,
13 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).
14 The court looks to the last reasoned state court decision as to the basis for the state court
15 judgment. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002) (citing Ylst v. Nunnemaker, 501
16 U.S. 797, 803-04 (1991)). Where, as here, the state courts summarily deny the petition ,
17 AEDPA's strict standard of review is relaxed when the state court reaches a decision on the
18 merits but provides no reasoning to support its conclusion. Under such circumstances, the federal
19 court must "independently review the record to determine whether the state court clearly erred in
20 its application of Supreme Court law." Brazzel v. Washington, 491 F.3d 976, 981 (9th Cir.2007),
21 *quoting* Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir.2002); Delgado v. Lewis, 223 F.3d 976,
22 982 (9th Cir.2000) ("Federal habeas review is not de novo when the state court does not supply
23 reasoning for its decision, but an independent review of the record is required to determine
24 whether the state court clearly erred in its application of controlling federal law.").
25 II.     Review of Claims
26 A parole release determination is not subject to all of the due process protections of an
27 adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see
28 also Greenholtz v. Inmates of Nebraska Penal and Corr. Complex, 442 U.S. 1, 12 (1979)

(explaining that due process is flexible and calls for procedural protections that particular situations demand). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." Pedro, 825 F.2d at 1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole board proceeding, the only process to which an inmate is entitled is: 1) the inmate must receive advance written notice of a hearing, Pedro, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to be heard," Greenholtz, 442 U.S. at 16; and 3) if the inmate is denied parole, the inmate must be told why "he falls short of qualifying for parole." Id.

"In Superintendent, Mass. Correc. Inst. v. Hill, the Supreme Court further held that 'revocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by some evidence in the record.' 472 U.S. 445, 454 (1985), *quoting* Wolff v. McDonnell, 418 U.S. 539, 558 (1974)." Sass, 461 F.3d at 1128. In determining whether the "some evidence" standard is met, the Court need not examine the entire record, independently assess the credibility of witnesses, or re-weigh the evidence. Id. Rather, the Court must determine whether there is any evidence in the record that could support the conclusion of the disciplinary board. Id., *citing* Superintendent v. Hill, at 455-56. Although Hill involved the accumulation of good time credits, the same standard applies to parole, as both situations "directly affect the duration of the prison term." Id., *citing* Jancsek v. Oregon Bd. of Parole, 833 F.2d at 1390.

In making a determination whether an inmate is suitable for parole, the BPH is guided by the following regulations:

> (a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.
>
> (b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of

treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

15 Cal. Code Regs. §§ 2402(a) and (b).

With regard to the procedural protections, Petitioner received all that was due under Greenholtz. Petitioner was provided all that is required. Petitioner was provided with advance notice of the hearing, an opportunity to submit materials for the BPH's consideration, an opportunity to be heard during the hearing, and a written decision explaining the reasons that parole was denied. **(**See Exhibit B.**)**

At Petitioner's 2005 hearing, the BPH denied parole based on the gravity of the commitment offense, the escalating pattern of criminal conduct, a recent serious disciplinary conviction, inadequate parole plans, and lack of insight into the commitment offense. (Exhibit C, at 51-54.)

After reviewing record, the Court finds that there was "some evidence" to support the BPH's denial of parole based on the commitment offense.[3] Under California law, the commitment offense alone provides a sufficient basis to deny parole. In re Dannenberg, 34 Cal.4th at 1061, 1095 (2005); Cal. Penal Code § 3041(b). In order to find that an offense was committed "in an especially heinous, atrocious or cruel manner, there must be some evidence that the "violence and viciousness of the inmate's crime" is greater than that which is "minimally necessary to convict [the defendant] of the offense for which he is confined. (Cal. Code Reg. tit. 15, § 2402(c)(1); In re Dannenberg, 34 Cal.4th 1061, 1095 (2005). In California, "[s]econd

---

[3] Pursuant to Title 15, of the California Code of Regulations, Section 2402(c)(1) sets forth circumstances tending to demonstrate unsuitability for parole regarding the committed offense. The factors to be considered include:
   (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
   (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
   (C) The victim was abused, defiled or mutilated during or after the offense.
   (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
   (E) The motive for the crime is inexplicable or very trivial in relation to the offense.

15 Cal.Code Regs. § 2402(c)(1)(A)-(E).

degree murder is defined as the unlawful killing of a human being with malice aforethought, but without the additional elements-i.e., willfulness, premeditation, and deliberation-that would support a conviction of first degree murder." People v. Nieto Benitez, 4 Cal.4th 91, 102 (1992). "Malice, for the purpose of defining murder, may be express or implied. ([Cal. Penal Code] § 188.)  It is express 'when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature.' ([Cal. Penal Code] § 188; People v. Mattison (1971) 4 Cal.3d 177, 182, 93 Cal.Rptr. 185, 481 P.2d 193.)  Implied malice is present "when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart."  ([Cal. Penal Code] § 188; People v. Mattison, *supra*.)."  Based on the circumstances described *infra*, the BPH identified more than the minimal requirements for a conviction of second degree murder.

　　　　Here, Petitioner abused his defenseless and vulnerable two month old child merely because he was bothered by his crying at night and after drinking alcohol would strike the child. By the time the child was taken to the hospital he was in a grave state of health, with a fractured skull, various other breaks to different parts of his body, and discoloring of skin, evidencing signs of prior physical abuse.  Several days prior, the grandparents of the child observed swelling to the baby's head, and requested that Petitioner take the child to the hospital, which he refused. The grandparents also stated that on several prior occasions the child would scream as if in pain whenever he was picked up or his diaper was changed. (Exhibit C, at 14.)  Petitioner admitted to being jealous of the baby and after drinking he would strike the child. (Exhibit C, at 52.)  These circumstances clearly support the BPH's finding that the offense was carried out in a dispassionate manner, demonstrating an exceptionally callous disregard for human suffering, as it was unknown how long the victim was left to suffer, and "some evidence" supports the BPH's finding that Petitioner presents an unreasonable risk to public safety.  In addition, the motive for the offense was clearly inexplicable in relation to the offense, as Petitioner would go into a rage and beat the infant child merely because he was crying.

　　　　The BPH also considered and found that Petitioner had an escalating pattern of criminal conduct which included a special court martial while in the Navy, a summary court martial, and

three non-judicial punishments, all related to theft and drugs. (Exhibit C, at 53.) In addition, Petitioner recently suffered a disciplinary conviction for being involved in a work stoppage. (Id. at pp. 18, 53.) This was properly considered as a factor in determining Petitioner's suitability. See Cal. Code Reg. tit. 15, § 2402(c)(6) (the Board may consider institutional behavior while in prison in determining whether prisoner poses an unreasonable risk of danger to society if released.).

The BPH further found that Petitioner did not have realistic parole plans, as he did not have acceptable employment plans anywhere and he did not have viable residence plans in the last county of legal residence. (Exhibit C, at 53-54.) This is so, despite the previous Board panels advisement that if Petitioner desired to move to another county, he should seek employment plans there. (Id.)

In addition, the BPH expressed legitimate concerns regarding Petitioner's acceptance of responsibility and remorsefulness regarding the commitment offense. The BPH explained that although on the surface Petitioner appears to take responsibility for the offense, his reference to the responsibility is in terms of his failure to take the infant to the hospital sooner, not the responsibility for causing the injuries that lead to the infant's death. (Exhibit C, at 53.) The BPH also pointed out that Petitioner's expressions of sorrow and remorse centered around his own losses. (Id. at 17-18, 26-27, 29.) To this end, the BPH concluded that, Petitioner needs to engage in therapy, programming, and self help in order to face, discuss, understand and cope with stress in a nondestructive manner. The BPH found that Petitioner needs to develop further insight into the crime, and until further progress was made, he continues to be unpredictable and a threat to others. Although this is not enumerated as a factor to support a finding of unsuitability, it was nonetheless properly considered by the BPH. (See Cal. Code Regs. tit. 15, § 2402(b) ("All relevant, reliable information available to the panel shall be considered in determining suitability for parole.").

The BPH also considered the factors supporting a finding of suitability and commended Petitioner for his position as a teacher's aide with the vocational electronics instructor, exceptional grades, numerous laudatory chronos, involvement as a facilitator in the Muslim

Faith, participation in anger management, receipt of senior certification as electronic technician, classes in the emergency management institute, certification as a customer service specialist, and disciplinary free record with the exception of the 2003 rules violation. (Exhibit C, at 56.) On balance, the BPH found that these positive aspects did not outweigh the factors of unsuitability. (Id.)

On this record, the Court finds that "some evidence" supports the BPH's finding that Petitioner presents an unreasonable danger to public safety, based on the gravity of the commitment offense, the escalating pattern of criminal conduct, a recent serious disciplinary conviction, inadequate parole plans, and lack of insight into the commitment offense. (Exhibit C, at 51-54.)

In his traverse, Petitioner contends that the Board's continued reliance on the immutable factors of his commitment offense has resulted in a due process violation, as he has served beyond his minimum sentence and has had nine parole hearings. In Biggs v. Terhune, 334 F.3d 910, 916-17 (9th Cir.2003), the Ninth Circuit stated that "[a] continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." The Ninth Circuit reaffirmed its holding in Biggs in the case of Irons v. Carey, where it stated that although a denial of parole initially can be justified by relying on the gravity of the offense, over time, "should [the prisoner] continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of [his] offense and prior conduct would raise serious questions involving his liberty interest in parole." Irons v. Carey, 505 F.3d 846, 853 (9th Cir.2007), *citing* Biggs, 334 F.3d at 916. This point was recently restated in Hayward v. Marshall, 2008 WL 43716 *7 (9th Cir.2008). In both Biggs and Irons, the Ninth Circuit upheld the denials of parole based solely on the commitment offense, because in each of these cases the prisoner had not yet served the minimum term of his sentence. In Hayward, however, the Ninth Circuit reversed the denial of parole finding the commitment offense, in light of the extraordinary circumstances of the case, no longer had predictive value regarding the prisoner's suitability for parole.

1  First, and of significant note, the BPH did not rely solely on the circumstances of
2  Petitioner's commitment offense in determining that he was unsuitable for release on parole.
3  Second, although at the time of Petitioner's 2005 parole hearing, he had served approximately 24
4  years-9 years beyond the minimum 15 years-this alone does not result in a per se violation of due
5  process, as the Ninth Circuit has not provided a concrete standard as to when (and under what
6  exact circumstances) the sole reliance on the unchanging circumstances of the commitment
7  offense rises to the level of a due process violation.[4]  Lastly, the present case is factually
8  distinguishable from Hayward.  There, at the time of the Governor's reversal of a grant of parole,
9  Hayward had served 27 years of a 15 year to life sentence, the circumstances of the second
10 degree murder were much less grave than the circumstances of the present second degree murder,
11 as the Ninth Circuit noted that Hayward's crime "was committed decades ago and with the type
12 of unusual provocation", and the BPH had previously twice granted Hayward parole.[5]  Hayward,
13 at *1, 6.  This is not an instance where the life offense was committed with the type of unusual
14 provocation (quite the contrary), unlikely to reoccur.

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The instant petition for writ of habeas corpus be DENIED; and

2. The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of

---

[4] Nor has the United States Supreme Court spoken on the issue of whether and when the denial of parole based solely on the continued reliance of the circumstances of the commitment offense results in a due process violation, and therefore there is no clearly established Supreme Court authority on this issue.

[5] Hayward, along with other members of a motorcycle gang, confronted a man at a bar "who, according to conflicting accounts, had either slapped or battered and attempted to rape Hayward's girlfriend (who would later become Hayward's wife).  The confrontation turned physical and ended after Hayward stabbed the man twelve times, killing him.  In 1980, a California jury convicted Hayward of second degree murder, and the court sentenced Hayward to state prison for a term of fifteen years to life." Hayward, at *1.  Although the Ninth Circuit found that the circumstances of Hayward's offense did not alone support a finding that he was a danger to society, the Court noted that "certain conviction offenses may be so 'heinous, atrocious or cruel' that a prisoner's due process rights might not be violated if he or she were denial parole solely on the basis of the nature of the conviction offense.  We need not identify those offenses here.  We confine our holding to the facts of this case and the nature of Hayward's particular conviction offense." Id. at *8, n.10.

the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **April 18, 2008**             /s/ **Dennis L. Beck**
                                   UNITED STATES MAGISTRATE JUDGE